IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Joseph Macaluso, Jr.,            *

       Plaintiff
                                *

  V.
                                * Civil No. 1:12-cv-00399-SKG

Sharon Macaluso Myering,
       *

       Defendant.        *


\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Pending before the Court is defendant Sharon Macaluso Myering's Motion to Dismiss (ECF No. 23), and plaintiff's response in opposition. (ECF No. 26). For the reasons set forth herein, defendant's motion is GRANTED.

### I. Background

Plaintiff and Ms. Macaluso Myering divorced in 1991. (ECF No. 2-3). On August 15, 1991, they entered into a Separation And Property Settlement Agreement. (ECF No. 2-2). On or around this date the parties also entered into a Qualified Domestic Relations Order ("QDRO"), a revised version of which was entered into and approved by US Airways, plaintiff's employer, in December 2000. (ECF No. 2-15).

1

Plaintiff's pension plan was established under and is governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  29 U.S.C. §§ 1001, et seq.  The Pension Benefit Guaranty Corporation ("PBGC") took over the pension plan in 2005 following US Airways' bankruptcy.  (ECF No. 2-19, 2). PBGC is the plan's trustee, and is responsible for paying benefits owed to participants.  (Id.).

At some point prior to May 2010, plaintiff filed a claim for benefits with PBGC.  (Id. at 1).  He challenged his benefit of $1,117.28 a month through October 2005, and $312.58 thereafter, arguing that under the terms of the QDRO, he should receive a greater sum.  (Id.).  The claim was denied initially and on appeal.  (Id.).  PBGC provided a detailed breakdown of plaintiff's and defendant's benefits under the QDRO and determined that his benefit was not incorrectly calculated. (Id. at 2-4).  It is unclear if plaintiff attacked the validity of the QDRO in this claim, as he does here, or merely challenged the calculation of benefits.

## II.  Motion to Dismiss Standard

In evaluating a motion to dismiss, a court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff."  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Plaintiff is not under an obligation to "forecast" evidence sufficient to prove the elements of the claim. Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012). Plausibility does not entail a probability requirement, but does require more than the sheer possibility that a defendant has acted unlawfully. Id. "Legal conclusions, elements of a cause of action, and bare assertions devoid of factual enhancement," in addition to "unwarranted inferences, unreasonable conclusions, or arguments," fail to constitute well-pled facts. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Ultimately, plaintiff must allege sufficient factual allegations "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

## III. Analysis

In his complaint, plaintiff seeks to "either nullify or disqualify the Revised QDRO." (ECF No. 2, 1). More specifically, he alleges the following defects in the QDRO: 1) plaintiff's address is incorrect; 2) plaintiff's birthday is incorrect; 3) the formula and language in the QDRO is different than that used in plaintiff's separation and property agreement and 4) additional language (of unclear origin) was missing from QDRO. (ECF No. 2, 2-6).

Defendant makes three arguments in her motion to dismiss. First, she contends that "[t]he proper party defendant in an action for benefits under ERISA [§ 1132(a)(1)(B)] is the entity with decision-making authority over the plan at issue." (ECF No. 23-1, 3-4). Because PBGC "has been the Plan's trustee and has been paying benefits owed to participants under the plan," defendant argues, it is the "only proper defendant." (Id. at 4). Second, defendant argues that plaintiff's complaint is barred by the relevant statute of limitations. (Id. at 4-5.). Third, she argues that plaintiff's substantive claims are without merit. (Id. at 6-7.). The Court will address each argument in turn.

**A. Proper Party**

In response to defendant's contention that she is not the proper defendant in this action, plaintiff argues that he may bring the case against defendant "because her signature was required to make the revised QDRO active . . . and therefore her signature would be required to change any conditions on the revised QDRO in question." (ECF No. 26-1, 1). The Court disagrees.

QDROs are a "limited exception to ERISA's general requirement that benefit provided under a pension plan may not be assigned or alienated." Fox v. Fox, 167 F.3d 880, 883 (4th Cir. 1999)(citations and quotations omitted). QDROs, as opposed to domestic relations orders, are the "acceptable method for a divorced spouse to attach an interest in a former spouse's benefit plan." Metropolitan Life Ins. Co. v. Pettit, 164 F.3d 857, 863 (4th Cir. 1998). As such, if an agreement does not qualify as a QDRO, it does not operate to assign benefits to a former spouse.

While plaintiff's complaint is not explicit, he ultimately seeks to nullify the QDRO and receive benefits wrongfully distributed to defendant. (ECF No. 2, 7)(alleging that "defendant is actually receiving my retirement benefit" and asking for the benefits plaintiff "should have been receiving since his retirement began."). As such, it is best construed as

5

a claim under ERISA § 1132(a)(1)(B) for wrongful distribution of benefits under a QDRO. This section provides that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

An individual with no control over a benefits plan may not be sued in a §1132(a)(1)(B) claim: "the law in this district is that the proper party defendant is the entity which holds the discretionary decision-making authority." Ankney v. Metro. Life Ins. Co., 438 F. Supp. 2d 566, 574 (D. Md. 2006). A party with "with no control over its [the plan's] administration, is not a proper defendant in this [1132(a)(1)(B)] action." Gluth v. Wal-Mart Stores, Inc., No. 96-1307, 1997 U.S. App. LEXIS 16451, (4th Cir. 1997); see also Sawyer v. Potash Corporation of Saskatchewan, 417 F.Supp.2d 730, 737 (E.D.N.C. 2006)("The party that controls administration of an employee benefits plan is the only proper defendant in an action concerning benefits under ERISA.").

Plaintiff has not alleged that Ms. Macaluso Myering holds any discretionary power over the plan's administration. While he is correct that Ms. Macaluso Myering's signature may be required to revise a QDRO, plaintiff seeks to "nullify or disqualify" the

6

current QDRO and recover lost benefits. This action is best categorized as a §1132(a)(1)(B) action, and therefore must be brought against an individual or entity with discretionary authority over the plan. As such, PBGC, not Ms. Macaluso Myering, is the proper defendant.

**B. Statute of Limitations**

The cause of action for benefits due under ERISA does not contain a statute of limitations. As a result, courts borrow the state law limitations period applicable to claims most closely corresponding to the cause of action. <u>White v. Sun Life Assur. Co.</u>, 488 F.3d 240, 245 (4th Cir. 2007). Actions brought under § 1132 are construed as breach of contract actions for statute of limitations purposes. <u>Cross v. Bragg</u>, 329 Fed. Appx. 443, 453 (4th Cir. 2009); <u>Dameron v. Sinai Hospital of Baltimore, Inc.</u>, 815 F.2d 975, 981 (4th Cir. 1987).[1] In Maryland, a breach of contract action is governed by a three year statute of limitations. <u>Id.</u>

Plaintiff notes that he is aware of the three year statute of limitations, but argues that because of the "alternate payee's

---

[1] Defendant notes that plaintiff's claim could be construed as a breach of fiduciary duty, which is subject to a six year statute of limitations, or three years after the earliest date on which the plaintiff had actual knowledge of the breach of violation. 29 U.S.C. § 1113. The Court finds that this action, in which plaintiff alleges that the plan has failed to provide benefits due to him, is most analogous to a breach of contract. <u>Cross v. Bragg</u>, 329 Fed. Appx. 443, 452 (4th Cir. 2009); <u>Jones v. Stafford</u>, No. 8:12-cv-00891, 2012 U.S. Dist. LEXIS 166169 (D. Md. Nov. 20, 2012)(finding that "miscalculation of benefits actions sound in breach of contract.").

7

refusal to let me know how much of my USAIR retirement benefit she is receiving," he was unable to learn what calculations were being used by PBGC to disperse benefits until March 2011, when he was informed in response to his appeal. (ECF No. 26-1, 2). He therefore asks that the court "waive any statute of limitations restrictions." (Id.).

The Court declines to waive the statute of limitations. First, plaintiff's argument ignores the stated purpose of his complaint: "to nullify or disqualify the Revised QDRO." (ECF No. 2, 1). Plaintiff's complaint is based on alleged defects in the QDRO, including an incorrect address, incorrect birthdate, and the fact that the QDRO's retirement distribution provision was not modeled on plaintiff's separation agreement. (Id. at 1-3). Plaintiff signed the QDRO on September 18, 2000, and therefore was well aware of these alleged defects on that date. While plaintiff claims that he only was informed of the calculations used to disperse benefits until later, he was aware of the benefit distribution under the QDRO on the date that it was signed, and knew the amount of benefits he received thereafter. As such, he had sufficient information to bring this claim in 2000. Accordingly, the Court finds that the complaint is time-barred under the three-year statute of limitations.

**C. The Validity of the QDRO**

As noted supra, plaintiff claims that the QDRO is invalid because it contains the following defects: 1) plaintiff's address is incorrect; 2) plaintiff's birthday is incorrect; 3) the formula and language in the QDRO is different than the one used in plaintiff's separation and property agreement and 4) additional language (of unclear origin) was missing from QDRO.

In order to qualify as a QDRO, a domestic relations order must contain:

> i. the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
>
> ii. the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined.
>
> iii. the number of payments or period to which such order applies, and
>
> iv. each plan to which such order applies.

29 U.S.C. 1056(d)(3)(C).

Defendant correctly notes that there is no requirement that a birthdate or any additional language beyond that cited above be included in a QDRO. Neither is there any requirement that a QDRO replicate a prior separation agreement. As such, plaintiff's later three allegations are without support in law.

Defendant acknowledges that the address of the payee is required in a QDRO, but argues that this is not a strict requirement. The Ninth Circuit has dismissed as "exalting form over substance" the notion that "any arguable defect in the precise language of a 'domestic relations order' precluded its designation as a QDRO under ERISA." Stewart v. Thorpe Holding Co. Profit Sharing Plan, 207 F.3d 1143, 1151 (9th Cir. 2000). In so finding, the court cited to the legislative history of § 1056, which states:

> [t]he Senate committee intends that an order will not be treated as failing to be a qualified order merely because the order does not specify the current mailing address of the participant and alternate payee if the plan administrator has reason to know that address independently of the order.

S. Rep. No. 575, 98th Cong., 2d Sess., reprinted in 1984 U.S.C.C.A.N., at 2547, 2566. The Second and Tenth Circuits have similarly found that QDROs are not invalidated by the lack of an address, provided that the plan administrator has reason to know the address independently of the order. Metro. Life Ins. Co. v. Bigelow, 283 F.3d 436, 444 (2d Cir. 2002); Hawkins v. Commissioner, 86 F.3d 982, 991 (10th Cir. 1996).

Plaintiff has failed to state a plausible ERISA claim. First, the relevant requirement states only that a QDRO include the address of the participant and alternate payee. Here, the

purported QDRO does contain the participant's address, albeit with a typographical error in one number. (ECF No. 2-4, 1). It is unlikely that the specificity requirements for QDROs were targeted towards such a minor defect. Second, plaintiff acknowledges in his complaint that U.S. Airways "had the plaintiff's correct address on file when reviewing the revised qdro." (ECF No. 26-1, 7). It is therefore clear that the plan administrator here had reason to know the correct address independent of the QDRO. Accordingly, the Court finds that even accepted as true and in the light most favorable to plaintiff, the allegations in plaintiff's complaint fail to plausibly state a claim under ERISA.

## IV. Conclusion

For the reasons set forth herein, the Court dismisses plaintiff's complaint with prejudice.

Date:  10/4/13                             /s/                    
                                    Susan K. Gauvey
                                    United States Magistrate Judge